May it please the Court, I'm Pat O'Donnell and I represent Han Young Kim of Seoul, South Korea. Your Honors, I'd like to reserve three minutes for rebuttal. Manage your own time. Thank you, Your Honor. There is a difference, Your Honors, between a foreigner and a fugitive. And while the inherent power of the Court allows the Court to disentitle a fugitive from calling upon the Court and making his claims in arguments, there is no foreigner or alien disentitlement doctrine. The decision below is erroneous for that reason. Han Young Kim never fled and is therefore not a fugitive in the traditional factual sense. Han Young Kim does not reside abroad in violation of any duty that he owes to the courts of this country and therefore he is not even a constructive fugitive under the rule of law. Rather, the case is governed by the Supreme Court's teaching in Deagon and by this Court's prior rulings on what a fugitive is, by Wozniak, by Kaplan, and by Durkin. Well you not only have to show that the district court was wrong, but it was clearly wrong. And given the conflict in authorities, how can you survive that burden on mandamus? Well, Your Honor, let me take the two parts of your question, whether it is clear error or whether, and then what the analysis is. As the Court knows, we submitted a 28-J letter just last week on that. I wish we had included it in the briefs, and I'm sorry for the late nature of it. But we did it because we realized that the sprinkling of cases that talk about the clearly erroneous standard, one of the bounding factors, is in fact inconsistent. Samantha Antitrust, Calderon, a number of them actually apply de novo review. And the case we provided, the Calderon case from 1998, actually explains it. It explains when the Court is exercising supervisory mandamus, as the Court is doing here, and it faces a novel issue, an unresolved issue, then ordinary legal review is appropriate. And in fact, in prior cases — How does that — what's the interplay with that on the first prong of Bauman, though? Isn't Judge Thomas's question the key to this case, that unless the law is clearly wrong, that you don't satisfy the first prong of Bauman? I don't think that is the key to the case, Your Honor. And I would direct the Court to a number of cases of this Court that show so. In San Jose Mercury News, the court reviewed on mandamus the question of permissive intervention for a newspaper that wanted to get summary judgment papers under the Public Right to Court Records Doctrine. That was the first case that held that they were entitled to such cases, and it was reversed on mandamus. Similarly, in Northern Marianas, the question was, could a district court order a government official to appear in person at a settlement conference with settlement authority? There was no authority saying one way or the other. That's a classic discretionary issue. And yet the Court held, being a first impression, and you need to guide the lower courts, that the court below had erred on the law. And the same with Islamic Shura, where, again, it was a discovery sanction issue. So there are a number of cases, Your Honor, where, in fact, on supervisory mandamus, as distinct from traditional mandamus, the Court has applied to no vote view. And Calderon makes that clear, Calderon dealing with another issue of first impression, the limits of the death penalty under the Espionage Act. So why is this one of those cases, counsel? Why supervisory mandate, Mr. Honor? Right. Because the question is, what should the courts below do in a circumstance like this, where the government has indicted somebody overseas, somebody who is not a fugitive in any traditional sense, certainly, who has good facial challenges to the indictment? The indictment, of course, is just an accusation. Well, that's a summary of the case, but why is this one that you think that is a case of extreme importance that really warrants supervisory mandate? Because, Your Honor, the lower courts don't have direct guidance on the issue. That's true of a lot of areas. It is, Your Honor. That's 100 percent true. But what separates supervisory mandamus or mandamus generally from those other cases is the lack of an alternative here, the other bounding factors. In other words, there is nowhere else to go, and he is subject to prejudice that can't be otherwise corrected because there is no appeal. But that's true with ordinary mandamus as opposed to as well as supervisory mandamus. That is true. You're right, Your Honor. But ordinary mandamus is not directed down towards the lower court, but out towards usually an executive branch official exercising a ministerial task. No. Actually, we have thousands of ordinary mandamus cases we hear every year. Usually they're resolved at the motions panel, not a full-blown merits panel, but we deal with those all the time. There are discovery issues. There are other types of issues, and we do religiously follow the empowerment factors. So I think they're relevant here, unless you can show us this is in a different category of cases. No. I don't contend it's in a different. Well, I contend it's supervisory mandamus, Your Honor, but not that it's supervisory mandamus. And that's why I point to Northern Marianas, to San Jose Mercury, to Calvary Mountain. The Court has done this and explained quite expressly that it is subject to ordinary review in these circumstances. Now, the Court has also said that the review standard is, I think, at best unclear, if I'm recalling the words correctly. But in this case, Your Honor, I don't think it really matters at the end of the day. Deegan teaches on the merits that the inherent power to disentitle somebody, to refuse to hear arguments, is an extreme remedy and limited strictly by necessity. And the decision below, by any standard, goes beyond that. The decision below, Your Honor, is also, by any standard, is in direct conflict with the prior case law on the meaning of fugitive. It conflicts with Wozni. What do you think is your best case for that proposition? What case is most in conflict with this, according to your view? I'd say it's a tie, Your Honor, between Wozni, Kaplan, and Durkin. Wozni and Kaplan both deal with 3290, the tolling statutes for fugitives. Both reject the mere absence standard, which is So that's not in our circuit. Do you have a Ninth Circuit case? Wozni and Kaplan, Your Honor. Oh, I'm sorry. I misunderstood you. I thought you were referring to the Second Circuit case. So you think those two are both Ninth Circuit cases? Both Ninth Circuits. And so is Durkin. Durkin, by the way, expressly rejects the argument advanced here. Durkin construes the fugitive in the obsession of firearms statute. The government in Durkin argued that somebody who had been out of the country and was then indicted and didn't immediately surrender was therefore a fugitive. And it said the order of things didn't matter. He didn't have to flee, but merely not returning with notice of the indictment constituted a fugitive. And this court held that that was no evidence at all of fugitive stats, that the government tries to distinguish Durkin on the grounds that it's a substantive offense and beyond reasonable doubt is in play. Counsel, I'm interested in a different Baldwin factor and whether this is an off-repeated error. Years ago, of course, decades ago, when some of this case law was being developed, there weren't red alerts through Interpol that essentially prevented someone from leaving his or her home country. But do we have anything in the record that tells us that this is happening, you know, the frequency with which this is happening or that we may, our district courts may run into this more often? I didn't see anything, and that's what I'm wondering about. Your Honor, there's nothing in the record about the frequency with which this happens. It's certainly not an off-repeated error, though, that we can tell from this record. I think that's correct, Your Honor. And our contention is not that it is off-repeated. I would point out, however, that the government has raised the specter of a flood of such motions if the Court holds that a fugitive may, not a fugitive, pardon me, somebody who has not moved to the U.S. is a foreigner. If the Court holds that those challenges may be raised, there might be a flood of those. Which seems to dovetail with the need to give, which I understand your opening argument to be, it seems to dovetail pretty directly with the need to give more guidance to the district courts if we can really realistically expect this is going to happen more frequently. There's reason to believe it will happen more frequently, but there's not a well-developed record because the evidence on that lies outside and with the Department of Justice, which has said that it intends to go overseas to aggressively, in this type of case, in Foreign Corrupt Practices Act cases, to apply U.S. law aggressively, extraterritorially. Even though there may be some confluence between the two doctrines at issue here, I'm troubled by the concept that someone can remain outside the jurisdiction of the Court in the sense of surrendering him or herself to that jurisdiction and yet get the benefit of the Court. There's a case going on right now, a well-known person in a foreign country that is alleged to have done various things, continues to appear on TV and other things and lecture people about national security issues. What you're suggesting here would, in fact, permit someone of that nature to say, you know, I'd like to try my case, but I want to stay here. I don't want to submit myself to the jurisdiction of the Court. How would that be different? I'm referring, of course, specifically to Mr. Snowden. How would that be different, if he were charged with a crime, than what your client has allegedly done here? Your Honor, I think the difference is the case before the Court today does not involve somebody attempting to try his case in absentia, either through the media or any other way. It is a facial challenge to an indictment, and that's all it is, something that can and should be heard on the papers and resolved on the papers. There are consequences to an indictment, but as the Court counseled in Deegan, this is not a case that requires discovery. If the government's arguments are erroneous and if the defendant's arguments are correct, then the case should be dismissed, and the merits actually matter. That's what's at issue here, Your Honor. And I suppose it's not quite a hypothetical, but the Snowden allegation or the allusion that you make also refers to or gets to the issue of the Court's dignity. The dignity of the Court rationale is probably the least defined. Again, Deegan counsels that it has to be limited by necessity, but I suppose if somebody was outside making public comments about the proceeding of the case, the Court might take that into effect. There's nothing like that here, not a single thing. Your Honor. Do you want to address mutuality? I will, Your Honor. The mutuality argument, I think, is exactly upside down. Right now, the government, by virtue of its ability to have an unreviewable indictment out there, can effectively punish my client. On the other hand, if the Court rules in our favor and requires that we get a ruling, that will have mutual effect. If the Court upholds the indictment below, then our client will continue to be subject to it. If the Court dismisses it, he will not, and that will turn on the merits on whether or not it is, in fact, a good indictment that states an offense. We contend it doesn't, the government contend it does. That's mutuality, Your Honor. Your Honor, I only have a few seconds left. I would like to address Cattino briefly. As I said, constructive flight doesn't apply here. I think even under the Second Circuit's reasoning, and I ask the Court to go look at Cattino closely, in Cattino, the man was a bail jumper. Cattino fled. It's not clear why the idea of constructive flight is even raised. However, the Court twice, twice points out that Cattino had a duty to do all he could do to return and didn't. Now, that's a distinction, Your Honor. You could rationally say that somebody who didn't flee after an indictment but did somehow violate a condition to return, did remain abroad in violation of an obligation, that could be called constructive flight. That's not presented here. It's not even alleged here. The only allegation about Mr. Kim's contact with this country is that he one time, one time, in the course of a nine-year conspiracy visited. There's no allegation of flight and there's no allegation of duty. Thank you, counsel. Thank you, Your Honor. May it please the Court, Ilana Artson on behalf of Real Party and Interest of the United States of America. First of all, thank you so much for accommodating me this morning. With respect to the standard of mandamus here, in the District Court, the parties agreed that this was a discretionary decision. There were facts and circumstances before the Court and the Court made findings based on those facts and circumstances. Specifically, the Court found that these facts were sufficient to satisfy the traditional fugitive standard under Watson. Then on these facts and circumstances, there was still force to the mutuality principle even if we were not talking about a traditional fugitive. And third, that the fugitive disentitlement doctrine is discretionary and that on the facts and circumstances here, there were really no exceptional circumstances or special circumstances that would warrant hearing the motion to dismiss at this time. The parties agreed to all of that? The parties agreed that the Court had discretion to grant leave or not to make the special appearance. So that's different than my question. On appeal, the defendant is now making a different argument. He's saying there's clear error here because, in fact, the District Court didn't have discretion. Because this defendant did not meet the traditional fugitive standard under Wasney, that was the end of the story. The Court didn't have discretion. And there must be categorical rule that any time you have an overseas foreign defendant who was in his country at the time the indictment is returned, that defendant is entitled as a matter of law to a piecemeal adjudication of his motion to dismiss even if he doesn't submit to the jurisdiction of the Court. That goes to the Court. It was stipulated to the facts and that it was discretionary on the part of the District Court whether to allow the special appearance. By what standard do we review this appeal? Do you have a waiver? Do you have? What exactly are we doing here at this point? Is this just a pure matter of law? Is it de novo review of a discretionary act? What are we dealing with? Well, under the mandamus standard, there has to be a clear error of law. Can there be a clear error of law when there is an abuse of discretion or a discretionary standard? I mean, this Court has said that it would be extremely difficult to satisfy the mandamus standard. We're not saying that could never happen. Apparently, in Hejazi, the Seventh Circuit thought that that standard was satisfied based on the unusual facts and circumstances. What the defendant is asking for here goes well beyond what the Court did in Hejazi and, in fact, is not supported by case law from any court. The defendant cannot cite a single case that has found this categorical rule. So we have to go back to what the District Court did in this case and whether its exercise of discretion was a clear abuse of discretion. And based on the facts and circumstances here, it was not. And let me start with, and these are, in fact, really interrelated principles, but the defendant claims that there was clear error in two respects. First, that there's no such thing as constructive flight, and so if the WASNE standard is not satisfied, that's the end of the case, and that there is no such thing as a separate mutuality principle. Because the case law does not, because there is case law to support both of the District Court's rulings, we can't have a clear abuse of discretion. And so let me start by making the following point. It is well recognized by the Supreme Court and by this Court that a word can have different meanings in different contexts. And the best example of that might be the word willfully, which in different criminal contexts can mean different things. It can mean in one context sort of knowledge of wrongfulness. It can mean in the tax context a knowledge of a duty. Or it can, in some cases, mean essentially knowingly. And as we've pointed out in our papers, fugitive has different meanings in different contexts as well. That's why we cited the Murguia-Oliveros case to say that in the context of tolling under the supervised release tolling provision, this Court specifically declined to use the WASNE definition and standards, saying we have to look at the reasons why these definitions make sense. And in the supervised release context where we're looking at a certain purpose, namely, you know, clearly we wouldn't want to reward a defendant for being a fugitive and not being under supervision, that's very different than the WASNE standard, which was developed under Section 3290, the statute of limitations. There we have a very different purpose. We want to balance the government's need to obtain evidence against the defendant's right not to be perpetually in jeopardy, and we want to have a narrow rule under 3290 because we want to encourage the government to be diligent. So we have to ask what definition of fugitive applies in this context. And in that respect, the District Court did not abuse its discretion or make a clear error of law in saying that we should look at the enforceability or the mutuality rationale and say that rationale has force here. And I think it's important to note that in the statute of limitations cases under which WASNE, Kaplan, Durkin were all decided, and incidentally in those cases, in Kaplan and Durkin, the problem was a lack of intent. Here the District Court made a finding, a factual finding that the defendant acted with the intent to flee, and I can discuss in a moment the facts that support that. But it's important to note in the statute of limitations context, enforceability is not a concern. The defendant is before the court in those cases, and he's saying you should dismiss my case on the statute of limitations based on when I was previously a fugitive. In this case, there is a separate concern about the enforceability or the mutuality rationale because we have a defendant who was not before the court. This rationale is over 125 years old. This was the original rationale of the Fugitive Disentitlement Doctrine, that the court should not waste its resources adjudicating matters where the judgment won't be enforceable. And what we have here is sort of an additional fact, which is should the court engage in piecemeal claims where we have a defendant who is unwilling to submit for complete adjudication of his case? And as we've pointed out in our papers, there are numerous district courts that have applied this very rationale in this circumstance, where you have a defendant who is a foreign defendant outside of the country at the time the indictment is returned and have declined to review motions to dismiss as well as other pretrial motions such as discovery motions. We cited a number of those cases in footnote five of our papers. I'd also like to point out that the second sort of aspect of this here is the defendant says, well, there's no such thing as constructive flight. And I find it curious that the defendant would be relying on the Deegan case here because essentially that case has been statutorily overruled. In that case, the Supreme Court said, although it wouldn't violate due process, you know, we think it's too harsh a remedy to disentitle a defendant who's a fugitive in a criminal case from pursuing a civil matter. But in CAFRA, the Civil Asset Forfeiture Reform Act, we have title 28, section 2466, which has codified the fugitive disentitlement doctrine. And it not only overruled Deegan, but it actually incorporated this constructive flight doctrine. It says that a judicial officer in discretion may apply the fugitive disentitlement doctrine in a civil forfeiture action if in the related criminal action after notice or knowledge of the fact that a warrant or process has been issued for his apprehension in order to avoid criminal prosecution, the defendant declines to enter or reenter the United States to submit to its jurisdiction. So we don't think that the fugitive disentitlement doctrine, which incorporates this constructive flight idea, is an outlier at all. It's codified in statute. And this Court, applying section 2466, on facts very similar to what we have here in United States versus $671,160 in United States currency, applied the doctrine and found that the defendant was a fugitive and should be disentitled on facts that were similar to those here. What we have in this case is a defendant who clearly was aware of the indictment. He has retained counsel, so he's clearly aware that he's wanted. He has declined to submit. And he's made clear throughout these proceedings in the district court, as well as these proceedings on appeal, that the reason that he is not returning, the reason that he is not traveling, the prejudice that he's suffering is precisely because he does not want to answer these charges. So we have the intent and we have the act under the constructive flight doctrine. And those are very similar to the facts in the $671,160 case where, again, the defendant made or the claimant, who was a fugitive in a related criminal case, made the same argument. He said it shouldn't apply to a foreigner who's outside the country at the time of indictment. And this court said, no, we are going to apply the doctrine because the district court's factual finding that the defendant satisfied these standards was not clearly erroneous. On similar facts, there again, the defendant also was aware of the charges, had declined to submit, and he had stated that essentially he was not returning because of the bail that was set in the criminal case. So on both of these grounds, both the constructive flight doctrine as well as the mutuality principle, we don't think there was any clear error. I also just had one last comment that I wanted to make with regard to the Bowman factors. And, you know, that has to do with the differences between this case and Hijazi. Because it is not the government's position in this case that there should be a categorical rule. To the contrary, it's the government's position that the district court has discretion and that there is ample guidance for the district courts in how to exercise that discretion. But as I listened to your argument today, you seem to be arguing for a concept of constructive flight that would be an absolute rule. In other words, that any time you indicted someone outside the United States who didn't return, that the constructive flight doctrines, constructive fugitive doctrine would apply. Is that your position? No, it isn't, Your Honor. So tell me what the difference is, what you've just been saying in your contention now that it's a case-by-case determination. Because it's a factual finding. And... So what facts would... Give me a hypothetical that what you think would apply that to which the doctrine wouldn't. Be applicable. Well, I mean, this court has said that mere absence is not sufficient. The court has also said that merely knowing of the charges and failing to submit is not sufficient. The court has to be able to make a factual finding that the defendant has the intent to avoid prosecution. So there have to be facts from which that determination can be made. Here, the court, the district court made that determination based on the fact that the defendant had previously traveled to the United States, so he had the ability to travel, and there was no indication that he could not travel. And because he had made clear throughout the litigation that the reason that he was not returning was because of these charges. That is very similar to the additional evidence that this court found sufficient in 671,000. So we don't think there's a categorical rule. It's like any other factual finding that a district court makes. But again, that's only half of the picture, because even if the defendant is not a traditional fugitive, which, by the way, in Hijazi, the defendant was not. In Hijazi, the government conceded that the defendant was not a fugitive because he had submitted. He would not be a fugitive under any definition, including the constructive flight doctrine. So if defendant's rule is correct, Hijazi would have been a very short opinion. But it wasn't. And in fact, the court went on to discuss mutuality and went on to discuss all of the special circumstances that it found, because this is a discretionary decision. And if there were exceptional circumstances in this case, we would agree that, you know, the court certainly has discretion. But the court didn't find those exceptional circumstances because they're not present. This is not a case like Hijazi where the defendant was outside of his home country and couldn't travel to his home country due to the red notice. This defendant is in his home country. He's in Korea. He can stay there. But he's not hiding. And that, forgive me for interrupting, but when you said Hijazi is different because he had submitted, I don't find that very persuasive, given this exact point that you're making. Well, he hadn't submitted to this country. That, well, he had submitted himself in the country where he was and he could have been extradited. Yes, but. They declined to extradite him. How is that different from Mr. Kim? He's never submitted himself. Well, he's not hiding. He's right there in his own country. That's true. And they haven't extradited. So how is that different? Well, the point that I'm trying to make, Your Honor, is that this clearly goes beyond whether the defendant is a fugitive in the narrow WASNI sense because Hijazi is a ruling that was based on special circumstances. Well, I'll get, I grant you that. And they're not the same circumstances here. Hijazi seems to me to be, have been an easier case, but. Correct. And so the question is, on these facts, did the district court abuse its discretion in saying I don't find special circumstances? I interrupted you when you're answering Judge Thomas's question. Do you want to finish that answer? I think she was on a different topic. Yes, she just seems to be at this point. Do you have anything, your time has expired. Any further questions? All right. Thank you for your argument. Your Honor, let me respond to two things that the government has argued. One is this discretion point. This is obviously a big part of the government's argument, but the record just doesn't support it. I would direct the court to Exhibit 3 in our brief where we provide the court with a decision below. The discussion of discretion takes place entirely on the fourth page. It is two paragraphs. I'll leave out the cites, but I'll read it to you. Beyond the application of the fugitive disentitlement doctrine, the court has the discretion to hear a challenge to the indictment prior to arraignment. Then there are two cites. Thus, on both general principles of discretion and on the doctrine of fugitive disentitlement, the court declines to exercise its discretion. Which one are you on, the minute order denying or the renewed motion? Which one are you on? The minute order denying. The renewed motion is even briefer and simply refers back to the prior. No, I just wanted to pull it up. It's Exhibit 3, your Honors. So, your Honors, if there were a factual dispute, if there were facts that bore on the purposes of fugitive disentitlement other than his mere absence, you might have a different case. But Deegan resolves this case. And I think the government's concession at this case is just like Deegan, is fatal to it. Deegan points out the purposes of fugitive disentitlement, deter flight, encourage respect for the court, and mutuality. Well, you don't deter flight by punishing somebody who has never fled. You don't encourage respect for the court. By punishing somebody who has shown no disrespect. So, within the rule of Deegan, the necessity rule that bounds the doctrine, the only doctrine actually applied below, the case is clear. Now, we're not looking for a rule that gives automatic entitlement. There could be cases where, for instance, there are multiple defendants and the court doesn't want to hear from one because it's going to disrupt the order of briefing. Perhaps that was this case when it started off in 2009. But now there's nothing left except Mr. Kim and his claims, which will otherwise never be resolved. Does the court have any other questions that it would like me to address? No. Thank you very much. The case, as heard, will be submitted for decision. Thank you both for your arguments.
judges: Thomas, Smith, Christen